**Ex parte Daniel RAMIREZ.**

**No. 59926.**

Court of Criminal Appeals of Texas, Panel No. 1.

Feb. 21, 1979.

Before ONION, P. J., and PHILLIPS and TOM G. DAVIS, JJ.

## OPINION

PHILLIPS, Judge.

This is a post-conviction application for writ of habeas corpus relief pursuant to Article 11.07, V.A.C.C.P.

Appellant has filed an application for habeas corpus relief alleging that the "factual documentary evidence of material importance at the punishment phase of his trial was actively suppressed by the prosecution and the false picture of the facts presented constituted perjured testimony." Appellant argues that the "prosecution knew or should have known that it was misrepresenting documentary facts." Appellant's allegations and his Memorandum of Law and Points of Authorities appear to present two related issues. First, the State denied him a fair trial by introducing false evidence that it knew or should have known was false and second, the State suppressed evidence favorable to the defendant.

The trial court filed findings of fact which related that the appellant was convicted of rape in Cause No. C–9740–IH and was assessed a penalty of 50 years' imprisonment. That conviction was reversed and remanded in another post-conviction application for collateral relief in *Ex parte Ramirez*, Tex.Cr.App., 483 S.W.2d 259. Upon remand, appellant was convicted on August 24, 1972, in Cause No. C–9740–IH and was assessed a penalty of 12 years' imprisonment. After being released from confinement, appellant was brought to the bar for prosecution for robbery by firearms in Cause No. C–73–10638–IH. He was assessed a penalty of 99 years' imprisonment in that cause and his conviction was affirmed on appeal. *Ramirez v. State*, Tex. Cr.App., 543 S.W.2d 631. The record in that cause reflects that at the penalty stage of the trial the State introduced a pen packet relating to petitioner's conviction in Cause No. C–9740–IH which reflected a penalty of 50 years as having been assessed. The State's closing arguments to the jury emphasized in great detail this prior sentence and its apparent lack of rehabilitative or deterrent value and the need for a much harsher sentence in this cause. The prose-

cution recommended a 99-year penalty which the jury imposed. The trial court found that the State and itself had constructive notice of the proceedings in Cause No. C–9740–IH and *Ex parte Ramirez*, supra.

In its conclusions of law, the trial court considered such "constructive notice" as an irrebuttable common-law presumption which bound the district attorney's office and resulted in a denial of a fair trial and due process of law to the petitioner in his trial in Cause No. C–73–10638–IH. The trial court relied inter alia on *Alcorta v. Texas*, 355 U.S. 28, 78 S.Ct. 103, 2 L.Ed.2d 9 (1957), and *Ashley v. Texas*, 319 F.2d 80 (5th Cir. 1963).

■ This Court is not bound by the findings, conclusions, or recommendations of the trial court in reaching decisions on post-conviction applications for writ of habeas corpus relief. *Ex parte Hagans*, Tex.Cr. App., 558 S.W.2d 457; *Ex parte Williams*, Tex.Cr.App., 561 S.W.2d 1.

Some material considerations not addressed by the trial court, but which are properly before us from the various records relating to the events involved, are:

(1) Petitioner was a pro se applicant in his successful attack on the original conviction in C–9740–IH;

(2) There is no evidence to show that the prosecutors in C–73–10638–IH actually knew of the post-conviction proceedings in C–9740–IH;

(3) Petitioner's pro se Motion for Discovery in C–73–10638–IH, which included a request for "The criminal records of the Defendant," was granted and a notation was made that the "State has complied"; and

(4) Petitioner's records demonstrate a rare and lucid understanding of legal procedure and principles.

■ It is against this total backdrop that we must determine what effect, if any, petitioner's failure to timely object to the introduction of the pen packet containing outdated factual information or the repeated argument by the prosecution which relied on the unobjected to evidence has on our consideration of his contentions.

The trial court relied, inter alia, on *Alcorta v. Texas*, supra, and *Ashley v. Texas*, supra, for its conclusion that the complained of procedure deprived petitioner of a fair trial and due process of law. However, those cases demonstrate unequivocally that (1) the prosecutor knew of the false testimonial impression presented to the jury (*Alcorta*) or the psychiatric evidence of incompetency/insanity (*Ashley*) and (2) the defense was wholly unaware of same. Those cases in turn relied on the principle enunciated in *Mooney v. Holohan*, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935), that

. . . deliberate deception . . . by presentation of known false evidence is incompatible with "rudimentary demands of justice."

294 U.S. at 112, 55 S.Ct. at 342.

There is only a vague allegation, but no evidence in support thereof, that the prosecutor in C–73–10638–IH actually knew of the reversal and remand in C–9740–IH. The trial court, instead, relied on the concept of "constructive notice" to reach its conclusions.

The case coming closest to support such a proposition is *Giglio v. U.S.*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). In that case the government attorney who presented Giglio's case to the grand jury promised the key witness against Giglio that in return for his cooperation in the grand jury proceeding and trial he would not be prosecuted. At trial, while under cross-examination, the witness denied receiving any consideration from the government for his cooperation. The government trial attorney, different than in the grand jury action, told the jury no promises had been made to the key witness. The Court concluded that the prosecutor's office was a single entity and a promise made by one member was attributable to all. However, the applicability of *Giglio* and its concept of "constructive notice" to the case at bar falters on one critical distinction: Ramirez at all times knew what his personal criminal litigation history was. *Giglio* and his attorney could not

know what accords were reached between the government and its key witness. Cross-examination proved futile because of the witness's perjurious denial of any favorable arrangements with the prosecution. In the instant case, all harm from the erroneous evidence could have been obviated by the simple expedient of a timely objection.

Given the nature of the evidence involved in the cases where deprivation of due process was found because of a prosecutor's complicity in the presentation of false testimony or testimonial impression, an objection would not be possible. Thus, these cases never discuss the need for an objection.

This jurisdiction had clearly established the proposition that an objection was required to the introduction of evidence pertaining to prior convictions before any complaints based thereon would be considered on appeal. See *Tristan v. State*, 510 S.W.2d 329; *Coronado v. State*, Tex.Cr.App., 508 S.W.2d 373; *Lopez v. State*, Tex.Cr.App., 507 S.W.2d 776; *Aldrighetti v. State*, Tex. Cr.App., 507 S.W.2d 770; *Morrow v. State*, Tex.Cr.App., 500 S.W.2d 811; *Beard v. State*, Tex.Cr.App., 458 S.W.2d 85; *Vandall v. State*, Tex.Cr.App., 438 S.W.2d 578; and *Pendleton v. State*, Tex.Cr.App., 434 S.W.2d 694. Petitioner gives us no reason for his failure to make any objection to the introduction of the pen packet or the arguments of the prosecutors based upon that pen packet. His failure to so object constitutes a waiver of any complaint he might now have against the use of such evidence. We commend to the bench and bar the discussion of the policy basis for the contemporaneous objection rule as discussed in *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), for a further elaboration on why timely objections are essential to the orderly administration of justice. See also *Francis v. Henderson*, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976); *Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976). Although the harm from the introduction of the pen packet involved here is obvious, petitioner presents no reason for his failure to comply with this jurisdiction's contemporaneous objection rule. In fact, from the record before us, we would conclude that petitioner's behavior in this cause constituted a deliberate bypass which results in the forfeiture of State court remedies as expressed in the broader decision of *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), which was narrowed in *Wainwright v. Sykes*, supra. Although these federal cases referred to were concerned with procedural defaults by State court defendants which would foreclose federal habeas corpus review, we consider them persuasive in determining what this Court will review under applications made pursuant to Article 11.07, V.A.C.C.P.

In conclusion, petitioner's failure to interpose a timely objection at the penalty phase of his trial in order to prevent the introduction of the pen packet containing erroneous information constitutes a waiver of any contention he may now wish to raise in light of the peculiar facts of this case.

██ With regard to petitioner's contention that the State actively suppressed favorable evidence, we consider same to be without merit. First, we note that the trial records in Cause No. C–73–10638–IH reflect that petitioner's motion to discover his criminal record was granted and complied with by the State. Second, the information allegedly suppressed by the prosecution was already known to the petitioner. See *Ex parte Prior*, Tex.Cr.App., 540 S.W.2d 723; *Smith v. State*, Tex.Cr.App., 541 S.W.2d 831; *Greer v. State*, Tex.Cr.App., 523 S.W.2d 687; *James v. State*, 546 S.W.2d 306.

The relief requested is denied.