**Benito ALONZO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 58175.**

Court of Criminal Appeals of Texas, Panel No. 3.

Dec. 5, 1979.

Rehearing Denied Jan. 23, 1980.

Thomas Rocha, Jr., San Antonio, on appeal only, for appellant.

Robert Huttash, State's Atty., and Alfred Walker, Asst. State's Atty., Austin, for the State.

Before ODOM, PHILLIPS and W. C. DAVIS, JJ.

## OPINION

PHILLIPS, Judge.

This is an appeal from a conviction for introducing a deadly weapon into a penal institution with intent to facilitate an escape. Punishment, enhanced by proof of two prior felony convictions, is imprisonment for life.

Appellant challenges the sufficiency of the evidence to sustain the conviction, contests the voluntariness of his confession, and contends that his confession was inadmissible because it was obtained as the result of an unlawful arrest. Appellant also challenges the admissibility of the prior convictions used to enhance the punishment. We first deal with the sufficiency of the evidence.

The indictment in this case alleged that appellant

> . . . with intent to facilitate an escape introduce[d] into the Texas Department of Corrections, a penal institution, a pistol, firearm, a deadly weapon,
>
> . . .

The court charged the jury that they should convict appellant if they found he acted as a party to the offense by helping commit the offense under the terms of V.T.C.A. Penal Code, Section 7.02(a)(2).

Lawrence James Hall testified for the State as an accomplice witness. At the time of the offense Hall was an inmate trustee who worked outside the Walls Unit of the Texas Department of Corrections for Mr. Akin, an Assistant Director of the Department of Corrections. Hall testified that during the summer of 1974 Pedro Alonzo, an inmate and appellant's brother, told him that appellant was getting out of prison on parole and would be coming by the Akin house to give Hall some money. Soon thereafter appellant visited Hall, gave him $10.00, and told Hall he would see him again.

A week later appellant brought Hall two balloons and told him to give them to his brother or Fred Perales, another inmate at the Walls Unit. He also told Hall to tell his brother that he had almost been "busted," and had to store "the other things" away. Hall smuggled the balloons into the prison and gave them to Perales. Perales and Alonzo told Hall appellant would be back. Two weeks later appellant visited Hall and

gave him some plastic bags, the ·ends of which had been stapled shut. Hall smuggled these items inside the prison and gave them to Perales.

Soon after Hall agreed to smuggle items into the prison, Alonzo and Fred Perales spoke to Hall about smuggling in some guns. At first Hall refused, but eventually he agreed to smuggle the guns in for $1,000.00. Four or five weeks after the delivery of the stapled plastic bags appellant brought Hall a vinyl plastic bag with handles, referred to as an AWOL bag. The bag contained four .357 magnum pistols, one .38 pistol, ammunition, and $500.00. Hall smuggled some of the ammunition into the prison by sawing a one-gallon can of pears in half, replacing the contents with the ammunition, and carrying the can into the prison on a pretext that there had been a mix-up in a food order. Hall subsequently smuggled the .38 pistol and ammunition into the prison in a can of peaches, and smuggled in two of the .357 magnum pistols by concealing them in hollowed-out hams. Hall testified that three weapons admitted in evidence and stipulated by both parties to be those used in the Fred Carrasco escape attempt were similar to the weapons he smuggled into the prison. Shortly after Hall smuggled the weapons into the prison, the Carrasco party made its escape attempt.

Appellant gave a written confession that was admitted in evidence. In his confession appellant stated that just before he was released on parole in March 1974, he saw Fred Carrasco at the Walls Unit. Carrasco asked appellant if he wanted to "do some dealing and make some money" when he was released from prison, and appellant replied that he did. Appellant gave Carrasco a telephone number at which he could be contacted in San Antonio. Carrasco then told appellant to go to Akin's house upon being released and give Hall $10.00. Appellant did so.

Two or three weeks after appellant arrived in San Antonio, he received a call from a Latin American woman. She told him to meet a man, George Cisneros, at a shopping center. Cisneros gave appellant two balloons that appellant delivered to Hall in Huntsville, in exchange for $250.00 or $300.00. Two weeks later appellant had another meeting with Cisneros, and as a result delivered another package to Hall to smuggle into the prison. Appellant received $300.00 payment for this delivery. Pursuant to a final agreement with Cisneros appellant delivered the AWOL bag to Hall. In his confession appellant did not state that he knew what was in the bag, but stated that the bag was "real heavy." Appellant received $500.00 for this delivery.

Jimmy Dan Brown testified that on May 7, 1974, Cisneros visited Brown's friend Bill Colsten, and as a result of the visit Colsten asked Brown to buy a pistol. Brown bought a .357 magnum pistol. Don Michael Colsten, Bill Colsten's brother, testified that he also bought a .357 magnum pistol on May 7, and bought two .38 pistols on May 24. Colsten testified that Cisneros picked up the .38 pistols. It was stipulated at trial that the .357 pistol purchased by Brown and one of the .38 pistols purchased by Colsten were used by the Carrasco party in its attempted escape from the Walls Unit in July 1974.

■ Appellant contends that this evidence is insufficient to sustain his conviction. Accomplice witness testimony such as Hall gave in this case will not sustain a conviction unless corroborated by independent evidence tending to connect the accused with the offense committed. Article 38.14, V.A.C.C.P. To determine whether the corroboration is sufficient, we eliminate the accomplice witness testimony from consideration and determine whether the independent evidence tends to connect the accused with the offense. *Rogers v. State,* 461 S.W.2d 399 (Tex.Crim.App.1970); *Odom v. State,* 438 S.W.2d 913 (Tex.Crim.App. 1969). It is the combined cumulative weight of the independent evidence which supplies the test. *Colunga v. State,* 481 S.W.2d 866 (Tex.Crim.App.1972). A defendant's confession can serve to corroborate the accomplice witness testimony. *Jackson v. State,* 516 S.W.2d 167 (Tex.Crim. App.1974).

By his own admission appellant worked out an agreement with Carrasco to make money after his release, and he immediately made contact with Hall, just as Hall testified. Appellant admitted delivering items to Hall, including the AWOL bag that contained the weapons and ammunition. Appellant was paid for these deliveries by a man named Cisneros. It was shown that Cisneros obtained through Brown and Colsten weapons that were used in the escape attempt. These weapons were of the same type that Hall testified he received from appellant and smuggled into the prison shortly before the escape attempt. This independent evidence amply corroborated Hall's testimony.

■ In challenging the sufficiency of the evidence appellant urges that there is no evidence to show appellant's intent to facilitate an escape. Although there is no direct evidence to show that appellant knew the AWOL bag contained firearms and ammunition, it is undisputed that the bag did contain those items, and that appellant delivered the bag to Hall. Appellant admitted that he alone transported the bag from San Antonio to Hall in Huntsville, and that he knew the bag was very heavy. Appellant admitted that he worked out an agreement with Carrasco to make money, and in fact made money by making several deliveries to Hall, the agreed-upon contact in Huntsville. It is apparent from Hall's testimony that appellant knew the delivered items were to be smuggled into the prison. The evidence further showed that plans to smuggle weapons into the prison were laid well in advance of the escape attempt, and appellant was in continuous contact with members of the conspiracy to escape. One of the few imaginable purposes for introducing firearms and ammunition into a prison is to facilitate an escape attempt.

Proof of a culpable mental state generally relies on circumstantial evidence. *Dillon v. State,* 574 S.W.2d 92 (Tex.Crim.App. 1978). See *Perez v. State,* 590 S.W.2d 474 (Tex.Crim.App.1979). The circumstantial evidence in this case was sufficient to support the jury's conclusion that appellant delivered the firearms to Hall with the intent to facilitate an escape.

We hold the evidence sufficient to sustain appellant's conviction.

■ Appellant contends that his confession was involuntary because it was coerced by threats and actions on the part of the law enforcement officers who obtained the confession. Appellant testified at the voluntariness hearing that on the evening of September 2, 1974, the jailer of the Walker County Jail, where appellant was in custody, came to appellant's cell and told him someone wanted to see him. Appellant was taken from his cell to a room where Texas Rangers Wesley Styles and Bob Elder began to interrogate him. Appellant testified that Styles asked him about the offense, and appellant said he knew nothing about it. According to appellant this made Elder angry and he stomped on appellant's foot, grasped him by the hair, and hit him on the neck. Appellant testified that Elder told him he would be killed if he did not make a statement. Appellant also testified that he was withdrawing from the effects of heroin addiction at the time, and he was promised that he would receive something to ease his withdrawal symptoms if he confessed.

Ranger Styles testified, contrary to appellant's account, that he met with appellant because he learned that appellant wanted to talk to him. When he came down from his cell, appellant told Styles and Elder, "I want to get my part of this thing straightened out." Elder read appellant his rights, and appellant proceeded to give a confession. Styles asked appellant questions and Elder typed appellant's responses. After the responses were reduced to a statement, appellant was given a chance to correct any errors. He then read the statement out loud and signed it. Styles testified that he, Elder, and appellant were seated around a desk throughout the taking of the statement. Elder was seated behind the desk so that he could type the statement; appellant and Styles were seated facing each other next to the desk.

After completing the statement the three men talked for a while about other suspects

in the case. Styles testified that during this conversation appellant began to shake and stated he was cold. Elder turned the air conditioner off. Appellant then told the officers he was withdrawing from heroin and was beginning to have chills. Styles called a doctor and requested aid for appellant.

Elder corroborated Styles' account when he testified at the trial on the merits.

When the testimony of the accused as to alleged coercive acts is left undisputed, the State has failed to meet its burden of proof of voluntariness, and the confession is inadmissible. *Sherman v. State,* 532 S.W.2d 634 (Tex.Crim.App.1976); *Farr v. State,* 519 S.W.2d 876 (Tex.Crim.App.1975). Although the officers did not specifically rebut appellant's allegations of coercion in this case, their account of the taking of the confession is fundamentally inconsistent with appellant's version. According to the officers, appellant called the meeting with the intention to confess and then did confess. Thus, no coercive acts were necessary to obtain the confession. The officers testified that they and appellant were seated throughout the taking of the statement; this conflicts with appellant's allegations that Elder grabbed his hair and stomped on his foot. The officers' testimony shows that they were not made aware of appellant's heroin withdrawal symptoms until after the statement was completed, when appellant began shaking. We conclude that the officers' testimony sufficiently rebutted appellant's allegations of coercion.

The trial court found that appellant made his confession freely and voluntarily without compulsion or persuasion. The trial court is the sole judge of the weight of the testimony and the credibility of the witnesses at a hearing on the voluntariness of a confession. *Myre v. State,* 545 S.W.2d 820 (Tex.Crim.App.1977); *Aranda v. State,* 506 S.W.2d 221 (Tex.Crim.App.1974). There was evidence to support his findings in this case, and we now sustain those findings. No error is shown.

Appellant contends that his confession was inadmissible because it was obtained as a result of an arrest made pursuant to an unlawful arrest warrant. Texas Ranger Wesley Styles swore out the complaint that underlies the arrest warrant as a result of information he obtained from Hall implicating appellant in the offense. The complaint alleges that appellant

. . . with the specific intent to commit the offense of facilitating the escape of inmates Fred Gomez Carrasco, Rudy Dominguez, and ingnascio [sic] Cuevas, from a penal institution, to wit; the Texas Department of Corrections, did then and there agree with the said Fred Gomez Carrasco, Rudy Dominguez, and Ingacio [sic] Cuevas that the said BENITO GONZALES ALONZO engage in conduct that would constitute said offense, and the said Benito Gonzales Alonzo performed an overt act in pursuance of said agreement, to wit: the said Genito [sic] Gonzales Alonzo did then and there provide the said Fred Gomez Carrasco, Rudy Dominguez, and Ignacio Cuevas with a deadly weapon, to wit; a gun and the said Fred Gomez Carrasco, Rucy [sic] Dominguez, and Ignacio Cuevas did then and there intentionally and knowingly cause the death of an individual, Elizabeth Yvonne Beseda, by shooting her with a gun provided by the said Benito Gonzales Alonzo while the said Fred Gomez Carrasco, Rudy Dominguez, and Ignacio Cuevas were attempting to escape from a penal institution, to wit: the Texas Department of Corrections . . .

The complaint consists of nothing more than Styles' conclusion that appellant committed the offense described in the complaint. It does not purport to state facts that are within the personal knowledge of Styles, and it supplies the magistrate with no information to support an independent judgment that probable cause exists for the warrant. It is clearly invalid. *Whiteley v. Warden, Wyoming State Penitentiary,* 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1970); *Jones v. State,* 568 S.W.2d 847 (Tex.Crim.App.1978); *Evans v. State,* 530 S.W.2d 932 (Tex.Crim.App.1975).

Although appellant's arrest pursuant to the complaint and arrest warrant was unlawful, that does not necessarily mean that the confession was inadmissible. If it is shown that the confession is voluntary and sufficiently an act of free will to purge the primary taint of the unlawful arrest, the confession is admissible. *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).

> The question whether a confession is the product of a free will under *Wong Sun* must be answered on the facts of each case. No single fact is dispositive. The workings of the human mind are too complex, and the possibilities of misconduct too diverse, to permit protection of the Fourth Amendment to turn on such a talismanic test. The *Miranda* warnings are an important factor, to be sure, in determining whether the confession is obtained by exploitation of an illegal arrest. But they are not the only factor to be considered. The temporal proximity of the arrest and the confession, the presence of intervening circumstances, see *Johnson v. Louisiana,* 406 U.S. 356, 365, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972), and particularly, the purpose and flagrancy of the official misconduct are all relevant. [Footnote omitted.]

*Id.,* 422 U.S. at 603–604, 95 S.Ct. at 2261.

This Court has often held that a confession otherwise shown to be voluntary is not rendered inadmissible because the accused was under arrest or in custody at that time, even though the arrest may have been under invalid process or without legal right. See *Morgan v. State,* 516 S.W.2d 188 (Tex. Crim.App.1974); *Chase v. State,* 508 S.W.2d 605 (Tex.Crim.App.1974); *Lacefield v. State,* 412 S.W.2d 906 (Tex.Crim.App.1967).

In this case appellant was arrested on the evening of August 30, 1974, by San Antonio police officers. He was taken to a magistrate who informed him of his constitutional rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). He remained in custody overnight and was flown to Huntsville the next morning. Styles, who accompanied appellant on the flight, read appellant his rights on the airplane and attempted to question him, but appellant refused to talk to him. Upon arriving in Huntsville, Styles took appellant before another magistrate, who read appellant his rights and set bond. Appellant was then placed in custody in the Walker County Jail. He was not visited or questioned by any law enforcement officers for two days, until the evening that he gave his confession. Prior to taking the confession Elder read appellant his rights. Appellant was not mistreated during his time in custody. He gave his confession freely and voluntarily. We hold that appellant's confession was not the result of an exploitation of his unlawful arrest. This contention is overruled.

In a supplemental brief appellant attacks the admissibility of the two prior convictions that were used to enhance his punishment. Appellant's complaint is that neither pen packet affirmatively shows that he was advised of his right to appeal or that he waived that right. No objection was made at trial to the admissibility of the pen packets. Nothing is preserved for review. *Ex parte Ramirez,* 577 S.W.2d 261 (Tex.Crim. App.1979); *Lopez v. State,* 507 S.W.2d 776 (Tex.Crim.App.1974). We note that the pen packets were certified and complete, and were properly proved up.

The judgment is affirmed.