Floyd Eugene WELCOME, Appellant,

v.

The STATE of Texas, Appellee.

No. 09 81 067 CR.

Court of Appeals of Texas,
Beaumont.

May 26, 1982.

Discretionary Review Refused
Sept. 15, 1982.

 

Joseph C. Hawthorn, Beaumont, for appellant.

John R. Dewitt, Asst. Criminal Dist. Atty., Beaumont, for appellee.

OPINION

CLAYTON, Justice.

Appellant and Paul Gage were jointly indicted for capital murder. Upon a severance being granted, appellant was tried separately and was convicted of the offense of capital murder. At the punishment stage, the jury answered Issue No. 2 in the negative, and his punishment was thereby fixed and assessed at confinement in the Texas Department of Corrections for life.

Appellant has not challenged the sufficiency of the evidence, and, for such reason, we will not discuss the evidence or details of the offense except as is necessary in discussing the various grounds of error.

■ Appellant's first ground of error complains of the failure "to give the jury panel the oath as required by Article 35.02, Texas Code of Criminal Procedure, prior to their voir dire examination." The record before us shows the trial court, in addressing the jury panel, stated:

> "Now, because this is a capital case, a capital prosecution, some very special and strict rules are set out in Texas that all of us must abide by. The first thing ... it is required that each of you take an initial oath. May I ask you to just keep your seats, but raise your right hand, please?"

The record then shows, immediately following the above statement:

> "(Whereupon, at this time the prospective jurors on the Special Venire Panel were sworn by the Court.)"

followed by a discussion of qualifications for the jury service.

*Art. 44.24(a)*, of *Vernon's Ann. C.C.P.*, provides that:

> "The Courts of Appeals and the Court of Criminal Appeals shall presume ... that the jury was properly impaneled and sworn; ... unless such matters were made an issue in the court below, or it otherwise affirmatively appears to the contrary from the record."

Appellant made no objection to the above proceedings, or to the oath given. Neither does the record in this case affirmatively reflect that the prospective jurors were not properly sworn. The record is silent as to the actual wording of the oath given. Therefore, the statute mandates a presumption on appeal that the jury was given the proper oath and was properly impaneled. *Duffy v. State*, 567 S.W.2d 197 (Tex.Cr.App. 1978), cert. denied, 439 U.S. 991, 99 S.Ct. 593, 58 L.Ed.2d 666 (1978). This ground of error is overruled.

■ Appellant's second ground complains of error by the trial court "in excusing venireman Kuchar sua sponte after he had been accepted by both the State and appellant."

We do not deem it necessary to recite the unique procedure and events involved in the interrogation and ultimate act of excusing this particular venireman. We have thoroughly searched the record and find no objection made by appellant which forms the basis of this ground of error. Appellant does not refer to or assert that any objections were made. Appellant's failure to object to the court's action waives the error, if any, and preserves nothing for review. *Esquivel v. State*, 595 S.W.2d 516 (Tex.Cr. App.1980), cert. denied per curiam, 449 U.S. 986, 101 S.Ct. 408, 66 L.Ed.2d 251 (1980); *Thompson v. State*, 537 S.W.2d 732 (Tex.Cr. App.1976); *Moore v. State*, 542 S.W.2d 664 (Tex.Cr.App.1976), cert. denied, 431 U.S. 949, 97 S.Ct. 2666, 53 L.Ed.2d 266 (1976). This ground is overruled.

■ Appellant's third ground of error contends the trial court "erred in allowing the State to challenge venireman Kuchar after he had been accepted by both sides and in granting this challenge." Appellant's entire argument under this ground is based upon the procedure followed by the trial court. Again we point out that no objection was made to this procedure and that such complaint is therefore waived. Appellant's only objection appearing in the record is "I would challenge the State's request that he be excused for cause. I would object to it on the basis I have just

stated." The only statements made by appellant preceding his objection concerned only the reasons why counsel believed the venireman was not subject to challenge for cause. His contention in the first prong of this multifarious ground differs from his trial objection. It is well settled that the ground of error presented on appeal must comport with the objection raised at trial; otherwise, nothing is presented for review. *Crocker v. State*, 573 S.W.2d 190 (Tex.Cr. App.1978); *Bouchillon v. State*, 540 S.W.2d 319 (Tex.Cr.App.1976); *Rovinsky v. State*, 605 S.W.2d 578 (Tex.Cr.App.1980).

The second prong of this ground complains of "in granting the challenge." The argument in his brief, in support of this "granting the challenge," is that the action of the court was erroneous because of the procedure leading up to the "granting of the challenge." He does not argue or complain that there were no valid grounds for sustaining the challenge for cause. For the reasons stated above as to the first prong of the ground, we overrule this part of the ground. This ground of error is overruled.

■ Appellant next complains of error in failing to grant his challenge for cause of venireman McCoy "because McCoy could not consider the full range of punishment in a murder case because he could not consider a punishment as low as five (5) years." In order to complain of the exclusion of a qualified juror or inclusion of an allegedly disqualified juror, the appellant must show that he was injured or forced to proceed with an objectionable juror. *Ford v. State*, 509 S.W.2d 317 (Tex.Cr.App.1974). In the case at bar, no attempt was made to show that appellant was required to take an objectionable juror. In fact, after using one of his peremptory strikes to excuse McCoy, appellant was granted two additional peremptory strikes. If it was error for the trial court to have overruled the challenge for cause, one of the additional strikes granted to appellant restored him to the position he would have been in had his challenge for cause been sustained. Appellant has shown no harm, and no reversible error has been shown. *Payton v. State*, 572 S.W.2d 677 (Tex.Cr.App.1978).

Appellant's fifth ground of error complains of error "in admitting State's Exhibit 3, a written statement of appellant, because the statement was obtained as a result of an illegal arrest of Appellant." Appellant filed his motion to suppress this written confession, and, following an evidentiary hearing thereon, the trial court overruled the motion and the confession was subsequently admitted into evidence. We overrule this ground of error for the following reasons.

The evidence presented at this hearing on the motion to suppress shows that at 1:13 p. m. on July 17, 1979, officers of the Beaumont Police Department were dispatched to the scene of a shooting on Roland Road. Upon arriving at the scene, they observed a green pick-up truck in the middle of the road with its doors open. A trail of blood led from the truck to the porch of a nearby residence where the body of Marion McGee was found. Further investigation revealed that he had been shot and killed by a .38 caliber weapon.

The police searched the truck and found, among other things, three rent receipts made out to Floyd Welcome. One was dated July 13, 1979, and indicated a .38 pistol was received in lieu of rent. The other two receipts were dated July 17, 1979, one indicating a .38 pistol was received by McGee in lieu of rent and the other indicated that $150 was received for rent.

The witness, Reverend LeBlanc, informed the investigating officers that he was approaching the scene of the truck at about the time of the shooting and observed two black males at the truck and identified Gage, whom he had known for some time, as one of the males and gave a description of appellant as the other. The two males fled from the scene because, as it developed later, Gage recognized Reverend LeBlanc.

The police also talked to a lady who lived near the scene of the shooting who told them that two black males had come to her house requesting a drink of water. She was aware of the shooting that had occurred earlier that day. She said the men told her that the police were looking for them and that the name of one of them was Floyd.

The investigation further disclosed that the victim, McGee, had purchased rent property at 1197 North Street (being the address of appellant) from a Mr. Sims. Sims, upon being interviewed, related that McGee was having problems collecting rent from a tenant and was considering taking a weapon in lieu of back rent. Sims believed the tenant lived at 1197 North Street.

With the above information, at approximately 11:45 p. m. on July 17, 1979, the Beaumont policeman proceeded to 1197 North Street. They talked to some of the neighbors of appellant, one of whom told the police officer she had seen the victim leave with appellant and Gage in the victim's truck about forty minutes before the shooting actually occurred. Another tenant, living in the same house at this address, informed the officers she had overheard an argument, a few days before, between appellant and McGee with reference to an exchange of a gun for rent, and, on this day of the murder, she had heard McGee agree to take appellant to get the gun. Appellant was not at home when the officers first appeared and began talking to these witnesses. At approximately 1:00 a. m. (the murder investigation had begun at 1:15 p. m. on the day before), appellant appeared and walked up to the porch of the building. Upon seeing the officers, appellant, without being requested to do so, immediately and "automatically" assumed the "pat down" position. The officers asked if he would permit them to go into his apartment for the purpose of questioning him and searching the premises. He was informed that he had the right to refuse the search. After being so informed, appellant voluntarily agreed to the search and signed a statement authorizing the officers to conduct a thorough and complete search of the premises located at 1197 North. The signed consent for search contained the statement that he had been informed by the officer "of my constitutional right not to have a search made of the premises . . . without a search warrant and my right to refuse con-

sent to such search...." No complaint has been made as to this search, or the fruits of the search.

A search of the premises was then made, and the officers found therein certain articles appearing to match articles which had been found near the scene of the shooting. When the investigating officers had first located the victim's truck, they searched a wooded area very near the scene of the shooting and found a portion of a red towel stained with shoe polish and a torn yellow plastic shopping bag containing a pair of trousers with the pants' legs being hemmed with a very coarse thread. When searching appellant's premises, they discovered a portion of a red towel with shoe polish stains, and a portion of a torn piece of a yellow plastic shopping bag, a shirt which matched the description given by one of the witnesses interrogated near the scene of the shooting, and a spool of thread appearing to match the thread used in hemming the trousers. All of these items appeared to match the items previously found at the scene by the officers.

Following this search, appellant was asked if he would agree to go downtown to the police station for further questioning. There was testimony given by the officers to the effect that appellant voluntarily consented to go with the officers. He was told he did not have to go with them and that he was free to leave.

After arriving at the police station, approximately 2:00 a. m., appellant gave a written statement after receiving the Miranda warning wherein he stated Paul Gage had committed the murder and denied his own guilt. Following this statement, appellant was "booked" and placed in jail. He was then removed from jail so that he could help the officers locate Gage. After showing the officers where Gage lived, appellant was returned to jail. This occurred at approximately 5:30 a. m. of the same morning he was taken to jail. The officers then arrested Gage. Appellant and Gage were then taken to the scene of the shooting. Gage located the weapon concealed under a log.

At approximately 8:30 a. m. on this same morning, July 18, appellant was taken before a magistrate, where he was given the Miranda warning and informed of the charges against him. Following the proceeding he was taken back to the police station. Upon learning that Gage had given a written statement which did not agree with his statement, appellant then decided to correct his statement. On the following day, July 19, after again being given the Miranda warning, appellant gave his confession which is State's Exhibit No. 3. On each page of the confession, there appears the typed Miranda warning. On July 20, appellant was again taken before the magistrate and was given the Miranda warning following which he signed a third statement wherein he confessed to stealing the weapon which was used in the shooting.

■ Appellant argues the second written statement, State's Exhibit No. 3, was inadmissible because it was made by him following his unlawful "seizure" in violation of the Fourth Amendment, U.S. Constitution, and relies upon Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979), and Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). Further, appellant contends, and we agree, the arrest without a warrant was unlawful pursuant to the provisions of V.A.C.C.P., Art. 14.03 and Art. 14.04. However, this fact alone does not necessarily render the confession inadmissible.

■ The Dunaway and Brown cases, relied upon by appellant, are not applicable to the facts shown by the evidence in the case at bar. Dunaway and Brown involved cases of a warrantless arrest without probable cause. In the case at bar, the record shows the police officers had obtained evidence that led them to believe appellant should, at least, be contacted to determine if he had any knowledge of the crime. When they found articles inside his apartment, after a search with his consent, which appeared to match articles they had previously found at the scene of the murder, they had probable cause for the detention and such did not constitute a violation of

the Fourth Amendment. See *Dunaway v. New York*, supra; *Brown v. Illinois*, supra; *United States v. Preston*, 608 F.2d 626, 632, 634, 635 (5th Cir. 1979), cert. denied, 446 U.S. 940, 100 S.Ct. 2162, 64 L.Ed.2d 794 (1980).

The evidence shows that from the time of this incident until the taking of this confession, appellant was not subjected to mistreatment by the police and such confession was not the result of oppressive or prolonged interrogation. He was repeatedly given the *Miranda* warning and was taken before a magistrate at which time he was again given the same warning. It was not until after his appearance before the magistrate that appellant indicated his desire to talk about the murder and not until the following day that he gave this confession.

It has often been held that a confession, otherwise shown to be voluntary, is not rendered inadmissible because the accused was under arrest or in custody at that time, even though the arrest may have been without legal right. *Alonzo v. State*, 591 S.W.2d 842, 847 (Tex.Cr.App.1979); *Dowdy v. State*, 534 S.W.2d 336 (Tex.Cr.App.1976); *Morgan v. State*, 516 S.W.2d 188 (Tex.Cr.App.1974), cert. denied, 420 U.S. 947, 95 S.Ct. 1330, 43 L.Ed.2d 426 (1975). Under all the circumstances related above, we hold that appellant's confession was freely and voluntarily given, after being properly and adequately warned of his rights, and that such confession was not the result of an exploitation of such arrest. This ground of error is overruled.

Appellant's sixth ground of error complains of admitting "State's Exhibit 21, a pistol, to be introduced into evidence because it was obtained as a result of an illegal seizure of appellant." In his first written statement, appellant gave details of the murder denying his guilt and placed all guilt upon Paul Gage. It was upon this information that the officers sought out Gage. When he was located, Gage was taken by the officers, accompanied by appellant, to the scene of the murder. Gage, and not appellant, located and recovered the pistol which was hidden under a log. It was Gage's location and recovery of the pistol that placed the weapon in the hands of the police. The information as to Gage was given in appellant's first written statement. Appellant has not challenged, by ground of error, this particular statement. It was introduced into evidence; no complaint has been made to this statement on this appeal. The information acted upon by the police officers located Gage, and Gage located the pistol. No error has been shown. This ground of error is overruled.

Appellant's seventh, eighth, ninth, and tenth grounds of error are based upon the same grounds as discussed under his fifth and sixth grounds, and for the same reasons given are overruled.

Appellant's eleventh ground complains of error in "failing to charge the jury on the legality of appellant's confession as required by Art. 38.23, Texas Code of Criminal Procedure."

We do not find any evidence presented to the jury raising any fact issue regarding the "legality of obtaining appellant's confession." All of the testimony on the issue, as stated above, was adduced on the motion to suppress before the court, and not before the jury. Where no such issue is raised by the evidence presented to the jury, the trial court acts properly in refusing such a request. *Jordan v. State*, 562 S.W.2d 472 (Tex.Cr.App.1978); *Hughes v. State*, 562 S.W.2d 857 (Tex.Cr.App.1978), cert. denied, 439 U.S. 903, 99 S.Ct. 268, 58 L.Ed.2d 250 (1978). This ground of error is overruled.

The judgment is affirmed.

AFFIRMED.