NO. 07-09-0076-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

JUNE 10, 2010

_____


TERRILL E. CRUZ, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

_____


FROM THE 100TH DISTRICT COURT OF COLLINGSWORTH COUNTY;

NO. 2719; HONORABLE STUART MESSER, JUDGE

_____


Before QUINN, C.J., HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, Terrill E. Cruz, was convicted by a jury of aggravated assault with a deadly weapon[1] after which he was sentenced to twenty years confinement and fined ten thousand dollars. Appellant asserts the trial court erred by: (1) denying his motion for a continuance; (2) overruling his objection to the State's notice of its intent to introduce evidence of extraneous offenses as punishment evidence ("State's Notice")

---

[1]*See* Tex. Penal Code Ann. § 22.02(a) (Vernon 2003).

because the trial judge served as prosecuting attorney at the time the alleged offenses were committed; (3) forcing Appellant to request the jury assess his punishment because the trial court overruled his objection to the State's Notice; and (4) overruling his objection to the State's Notice when most of the offenses were arrests only and prosecution was barred by the applicable statutes of limitation. Appellant also asserts: (5) because the trial judge did not disqualify himself due to his prior service as a district attorney, the trial court lacked jurisdiction to hear the matter; (6) the trial court erred in admitting accomplice testimony when there was insufficient corroboration; (7) the trial court erred in admitting the written statement of an accomplice in the absence of sufficient corroboration; (8) the trial court erred in denying Appellant's motion for a directed verdict; (9) there was no credible evidence Appellant used or exhibited a deadly weapon; and (10) the evidence was legally and factually insufficient to support the jury's verdict. We affirm.

## Background

On July 30, 2008, a Collingsworth County Grand Jury presented an indictment charging that Appellant, on or about July 4, 2008, intentionally or knowingly threatened Clarence Antonio Owens with imminent bodily injury by shooting at Owens's residence with a deadly weapon, to-wit: an unknown caliber firearm. At trial, Collingsworth County Sheriff Joe Stuart testified that, on July 4, 2008, he was dispatched to 705 Dalhart Street in Dalhart, Texas. When he arrived, he observed the front storm door was shattered and there were bullet holes in the front of the residence. In his opinion, the

bullet holes resulted from an unidentified firearm, possibly a 9-millimeter, being fired at the home. According to his testimony, the firearm used was a deadly weapon.[2]

Clarence Antonio Owens testified he lived at 705 Dalhart Street. On July 4, he was watching television when he heard what he thought were firecrackers outside. When he went to the front door, he saw a green pickup truck. Owens jumped into his car and followed the pickup. He identified the pickup as belonging to Appellant and then drove home. After returning home, he observed the same pickup pulling up to his house a second time and witnessed another shooting. His storm door was shattered and there were bullet holes in his house. He subsequently gave a statement to the police indicating he had seen Appellant drive by his house twice and he heard gunshots both times.

Lynda Ceballos, Owens's girlfriend, testified she was also at the house on July 4th when she heard what she thought were firecrackers outside the house. When she went to the front door, she observed smoke and Appellant's green pickup at the stop sign across from their house. While standing out by the mailbox, Ceballos could see Owens chasing the pickup and heard more shots. While she and Owens were trying to decide what action to take, Ceballos heard another shot and ran to the front door. She observed the same pickup driving by with Appellant hanging outside the passenger-side window firing at the house over the top of the pickup. She could not see who was driving the pickup. Shortly thereafter, she called the police.

---

[2]Deputies Bill Selfridge and Billy Gilbert corroborated Sheriff Stuart's testimony.

Ceballos further testified that after Appellant was freed on bail he came over to Owens's house. After she told Appellant to leave, he told her he was sorry for shooting up the house and he admitted he had been drinking that night.

Rene Granados testified he was Appellant's friend. In the early morning hours of July 4, he and Appellant were at his house drinking beer. They left the house to cruise around and Appellant directed Granados to drive down Dalhart Street. While Appellant was sitting on the pickup's passenger window, Granados heard something like gunshots coming from the front of the pickup. Granados testified that he did not know Appellant was carrying a firearm and that after this event he went home and went to bed.

Granados also testified Appellant had approached him regarding his testimony before trial. Appellant told him he really didn't need to be in court and "[i]t would be in his best interest that if [he] was going to be [in court] today, he would try to eliminate me from being [in court] today." Granados testified Appellant told him he was a "key witness." Granados also testified he gave a written statement to the police wherein he stated that, as he and Appellant drove by Owens's house, Appellant "started unloading a pistol at Antonio's house."

Thereafter, the jury convicted Appellant of aggravated assault with a deadly weapon and sentenced him to twenty years confinement and assessed a ten thousand dollar fine. This appeal followed.

4

**Discussion**

### I.      Motion for Continuance

Under the Texas Code of Criminal Procedure, criminal actions may be continued "upon sufficient cause shown; which cause shall be fully set forth in the motion." Tex. Code Crim. Proc. Ann. art. 29.03 (Vernon 2006). Motions to continue rest within the trial court's discretion; *Gallo v. State*, 239 S.W.3d 757, 764 (Tex.Crim.App. 2007), and, on appeal, a defendant must demonstrate that his defense was "actually prejudiced" by the court's ruling. *Janecka v. State*, 937 S.W.2d 456, 468 (Tex.Crim.App. 1996), *cert. denied*, 522 U.S. 825, 118 S.Ct. 86, 139 L.Ed.2d 43 (1997) (citing *Heiselbetz v. State*, 906 S.W.2d 500, 511 (Tex.Crim.App. 1995)).

Appellant filed a motion to continue a December 29th trial date. In his motion, he asserted trial of his case during the Christmas-New Year's holiday season would cause him prejudice because jurors would be "greatly inconvenienced, will not want to serve during that holiday period, and will be likely to hold Defendant responsible for such inconvenience." Appellant's claimed error must fail because his motion is premised on unsubstantiated assumptions and shows no *actual* prejudice.[3] Accordingly, the trial court did not abuse its discretion by denying Appellant's motion for continuance. Appellant's first point of error is overruled.

---

[3]Prior to trial, Appellant did not *voir dire* prospective jurors on whether they were inconvenienced, wanted to serve during the holiday season, or would hold Appellant responsible for any inconvenience.

**II.     State's Notice of Intent to Introduce Evidence of Extraneous Offenses**

**A.     Preservation of Error**

In points of error two, three, and four, Appellant asserts the trial court erred by overruling his objection to the State's Notice of Intent to Introduce Evidence of Extraneous Offenses, Punishment Evidence and/or Prior Conviction Information filed December 19, 2008 ("State's Notice"). Appellant contends that during a pretrial hearing the trial court denied his objection to the State's Notice. A review of the record belies this contention. What the record does reflect is that the court agreed with Appellant's objection as to the guilt/innocence phase of the trial and then cautioned the prosecutor to approach the bench prior to the introduction of any such evidence during the punishment phase.

Rule 33.1 of the Texas Rules of Appellate Procedure governs preservation of error, and states, in relevant part:

(a) *In General.* As a prerequisite to presenting a complaint for appellate review, the record must show that:

\*   \*   \*

(2) the trial court:

(A)   ruled on the request, objection, or motion, either expressly or implicitly; or

(B)  refused to rule on the request, objection, or motion, and the complaining party objected to the refusal.

6

Here, the record shows that Appellant never obtained an adverse ruling to his objection. Whether a particular complaint is preserved for appeal depends on whether the complaining party clearly conveyed to the trial judge the particular complaint, including the precise and proper application of the law as well as the underlying rationale, and obtained a ruling on that complaint. *See Pena v. State,* 285 S.W.3d 459, 464 (Tex.Crim.App. 2009). Because the trial court never denied Appellant's objection, points of error two through four present nothing for review and are, therefore, overruled.

### B.    Implied Overruling of Appellant's Objection

While we do not so find, to the extent that it might be argued that the trial court implicitly overruled Appellant's objection to the State's Notice during the pretrial hearing by cautioning the prosecution to approach the bench prior to tendering such evidence, any such ruling would be nothing more than a preliminary evidentiary ruling that preserves nothing for appeal. *Martinez v. State,* 98 S.W.3d 189, 193 (Tex.Crim.App. 2003) (summarize holding); *Harnett v. State,* 38 S.W.3d 650, 655 (Tex.App.--Austin 2000, pet ref'd).

### III.    Jurisdiction - Judicial Disqualification

By his fifth point of error, Appellant contends that, because the trial judge was disqualified on constitutional and statutory grounds, the trial court lacked jurisdiction over Appellant's case. Appellant asserts the trial judge should have been disqualified because he served as the District Attorney for the 100th District at the time when

Appellant's prior arrests, the subject of the State's Notice of Intent to Introduce Evidence of Extraneous Offenses, occurred. As a result, he asserts the trial court lacked jurisdiction to hear his case.

The applicable statute provides that "[n]o Judge . . . shall sit in any case . . . where he has been of counsel for the State or the accused." *See* Tex. Code Crim. Proc. Ann. art. 30.01 (Vernon 2006). *See also* Tex. Const. art. V, § 11. These provisions have been interpreted as mandatory, unwaivable, and jurisdictional. *Gamez v. State*, 737 S.W.2d 315, 318 (Tex.Crim.App. 1987). However, for over a century the Court of Criminal Appeals has consistently held that, as applied to former prosecutors, a judge is disqualified only if the record affirmatively demonstrates that he actively participated as a prosecutor in the *very* case he is presiding over as a judge. *See, e.g., id.* at 319; *Ex parte Miller*, 696 S.W.2d 908, 910 (Tex.Crim.App. 1985); *Holifield v. State*, 538 S.W.2d 123, 125 (Tex.Crim.App. 1976); *Carter v. State*, 496 S.W.2d 603, 604 (Tex.Crim.App. 1973); *Utzman v. State*, 32 Tex. Crim. 426, 24 S.W. 412, 412 (Tex.Crim.App. 1893). Without more, the mere fact that a judge served as a district attorney while an appellant's case was pending does not disqualify the judge. *Gamez,* 737 S.W.2d at 319-20; *Hathorne v. State*, 459 S.W.2d 826, 829 (Tex.Crim.App. 1970), *cert. denied,* 402 U.S. 914, 91 S.Ct. 1398, 28 L.Ed.2d 657 (1971).

There is no evidence Judge Messer participated as counsel in this case. A former prosecutor is not disqualified from presiding over a trial when a new offense is charged; *Hathorne*, 459 S.W.2d at 829-30, even where he personally prosecuted the defendant on a prior felony conviction used by the State for enhancement purposes.

8

*Nevarez v. State*, 832 S.W.2d 82, 88 (Tex.App.--Waco 1992, pet. ref'd); *O'Dell v. State*, 651 S.W.2d 48, 50 (Tex.App.--Fort Worth 1983, pet. ref'd).  The most that can be said on this record is that Judge Messer was district attorney at the time Appellant was arrested for various offenses.  Accordingly, Appellant's fifth point of error is overruled.

## IV.    Accomplice Evidence and Sufficiency of the Evidence

Appellant's points of error six, seven, eight, nine, and ten essentially challenge the sufficiency of the evidence in support of Appellant's conviction.  Points of error six and seven challenging the sufficiency of the accomplice witness corroboration assert the trial court erred in admitting the testimony and written statement of Rene Granados, an accomplice as a matter of law,[4] because there was no credible evidence of independent corroboration as to whether Appellant used or exhibited a firearm.  Point of error eight contends the trial court erred in denying Appellant's motion for directed verdict,[5] while points of error nine and ten ask whether, in the absence of Granados's accomplice testimony and written statement, there was legally and factually sufficient evidence to support the jury's verdict.

---

[4]During trial, the trial judge and the parties agreed Granados was an accomplice as a matter of law.

[5]A complaint regarding a trial court's failure to grant a motion for directed verdict is a challenge to the legal sufficiency of the State's evidence at trial; *Canales v. State*, 98 S.W.3d 690, 693 (Tex.Crim.App. 2003); *Williams v. State*, 937 S.W.2d 479, 482 (Tex.Crim.App. 1996), not factual sufficiency.  *See Long v. State*, 137 S.W.3d 726, 736 (Tex.App.--Waco 2004, pet. ref'd); *Turner v. State*, 101 S.W.3d 750, 761 (Tex.App.--Houston [1st Dist.] 2003, pet. ref'd).

### A. Standard of Review

In assessing the legal sufficiency of the evidence to support a criminal conviction, a reviewing court must consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences to be drawn therefrom, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. 2007). In our analysis, we must give deference to the responsibility of the jury to fairly resolve conflicts in testimony, weigh the evidence, and draw reasonable inferences from that evidence. *Id.*

### B. Aggravated Assault with a Deadly Weapon

The elements of aggravated assault with a deadly weapon as alleged in the indictment are that a person: (1) intentionally and knowingly threatens another (2) with imminent bodily injury and (3) uses a deadly weapon during the commission of the assault. *See* Tex. Penal Code Ann. §§ 22.01 and 22.02(a) (Vernon 2003). A firearm is a deadly weapon *per se*. *Ex parte Huskins,* 176 S.W.3d 818, 820 (Tex.Crim.App. 2005). *See* Tex. Penal Code Ann. § 1.07(a)(17)(A) (Vernon Supp. 2009).

### C. Accomplice Witness Rule and Legal Sufficiency

Article 38.14 of the Code of Criminal Procedure provides that a conviction cannot stand on accomplice testimony unless there is evidence tending to connect the defendant to the offense. Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon 2005). This rule is a statutorily imposed review and is not derived from federal or state constitutional

10

principles that define legal and factual sufficiency standards. *Brown v. State*, 270 S.W.3d 564, 568 (Tex.Crim.App. 2008), *cert. denied*, ___ U.S. ___, 129 S.Ct. 2075, 173 L.Ed.2d 1139 (2009).

Accordingly, when evaluating the sufficiency of corroboration evidence under the accomplice-witness rule, we eliminate the accomplice testimony from consideration and then examine the remaining portions of the record to see if there is any evidence that tends to connect the accused with the commission of the crime. *Castillo v. State*, 221 S.W.3d 689, 691 (Tex.Crim.App. 2007) (citing *Soloman v. State*, 49 S.W.3d 356, 361 (Tex.Crim.App. 2001)). To meet the requirements of the rule, the corroborating evidence need not prove the defendant's guilt beyond a reasonable doubt. *Brown*, 270 S.W.3d at 568; *Trevino v. State*, 991 S.W.2d 849, 851 (Tex.Crim.App. 1999). Rather, viewing the evidence in a light most favorable to the verdict; *Brown*, 270 S.W.3d at 568 (citing *Gill v. State*, 873 S.W.2d 45, 48 (Tex.Crim.App. 1994)), the non-accomplice evidence must simply link the accused in some way to the commission of the crime and show that a rational factfinder could conclude that the non-accomplice evidence "tends to connnect" appellant to the offense; *Simmons v. State*, 282 S.W.3d 504, 509 (Tex.Crim.App. 2009); *Hernandez v. State*, 939 S.W.2d 173, 178-79 (Tex.Crim.App. 1997), but not necessarily to every element of the crime. *Vasquez v. State,* 56 S.W.3d 46, 48 (Tex.Crim.App. 2001). Moreover, there is no set amount of non-accomplice corroboration evidence that is required for sufficiency purposes; "[e]ach case must be judged on its own facts." *Gill v. State*, 873 S.W.2d 45, 48 (Tex.Crim.App. 1994).

At trial, Sheriff Stuart testified that, when he arrived at Owens's residence, he observed that the front storm door was shattered and there were bullet holes in the front door and the house. Owens testified that, after he heard gunfire outside his house, he observed Appellant's pickup and gave chase. Owens observed Appellant's pickup a second time at his house, and again heard gunshots. Both Stuart and Owens confirmed that his storm door was shattered and there were bullet holes in his house.

Ceballos, Owens's girlfriend, also testified that, after she heard gunshots outside Owens's house the first time, she went to the front door and observed Appellant's pickup. She testified that, standing by the mailbox, she also observed Owens give chase and heard more gunshots. She further testified that, after she heard shots outside the house a second time, she observed the same truck with Appellant hanging outside the passenger-side window firing at the house over the top of the truck. Furthermore, according to her testimony, when Appellant was freed on bail he came to Owens's house and apologized for shooting up the house that night.[6]

The physical evidence of the bullet holes at Owens's house, Sheriff Stuart's testimony, Owens's testimony, Ceballos's testimony, and Appellant's own incriminating statement, all corroborate Granados's accomplice testimony that he observed Appellant

---

[6]An accused's confession alone can be used to supply the necessary corroboration for an accomplice's testimony. *Jackson v. State*, 516 S.W.2d 167, 171 (Tex.Crim.App. 1974); *Rayburn v. State*, 362 S.W.2d 649, 650 (Tex.Crim.App. 1962); *Mitchell v. State*, 669 S.W.2d 349, 350 (Tex.App.--Houston [14th Dist.] 1984, no pet.). Because the record reflects that Appellant's confession was voluntary; *see Zuliani v. State*, 903 S.W.2d 812, 825 (Tex.App.--Austin 1995, pet. ref'd), and proof of the confession does not depend on accomplice testimony; *Thompson v. State*, 54 S.W.3d 88, 94 (Tex.App.--Tyler 2000, pet. ref'd) (citing *Farris v. State*, 819 S.W.2d 490, 495 (Tex.Crim.App. 1990)), Appellant's incriminating statement may be used to corroborate Granados's accomplice testimony. *See Alonzo v. State*, 591 S.W.2d 842, 844 (Tex.Crim.App. 1980).

sitting on the pickup's passenger-side window, as they drove past Owens's house, while he heard something like gunshots coming from the front of the truck.

Taking all the evidence together, including Granados's accomplice-witness testimony, we find legally sufficient evidence from which a jury could reasonably infer Appellant intentionally or knowingly threatened Owens with imminent bodily injury while using and exhibiting a deadly weapon during the commission of an assault.

### D. Factual Insufficiency

When conducting a factual sufficiency review, we examine all the evidence in a neutral light and determine whether the trier of fact was rationally justified in finding guilt beyond a reasonable doubt. *Roberts v. State*, 220 S.W.3d 521, 524 (Tex.Crim.App. 2007), *cert. denied*, 552 U.S. 920, 128 S.Ct. 282, 169 L.Ed.2d 206 (2007); *Watson v. State*, 204 S.W.3d 404, 415 (Tex.Crim.App. 2006). We give deference to the fact finder's determination when supported by the record, and cannot reverse a conviction unless we find some objective basis in the record demonstrating that the great weight and preponderance of the evidence contradicts the verdict. *Watson*, 204 S.W.3d at 417. The criminal verdict will be set aside "only if the evidence is so weak that the verdict is clearly wrong and manifestly unjust, or the contrary evidence so strong that the standard of proof beyond a reasonable doubt could not have been met." *Garza v. State*, 213 S.W.3d 338, 343 (Tex.Crim.App. 2007). In addition, the fact finder is entitled to judge the credibility of the witnesses and may choose to believe all, or some, or none of the testimony presented. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex.Crim.App. 1991).

Appellant contends the State's evidence is factually insufficient because: (1) the police did not recover any gun, bullets, or shell casings at the crime scene; (2) the weapon could have been a BB gun, pellet gun, or fireworks; (3) Owens's front door could have been damaged in other ways; (4) Granados did not see a pistol; (5) Ceballos's testimony was contradictory and inconsistent; and (6) Granados's testimony was not believable.

Regarding Appellant's first four contentions, Sheriff Stuart testified there were three to four bullet holes in the front of the house that, in his opinion, were made by a firearm, possibly a 9-millimeter handgun, being fired at the house.[7] Deputy Selfridge also testified to the presence of bullet holes in the house and opined that the bullet hole in the bottom of the glass storm door was consistent with a gunshot. Deputy Gilbert corroborated the testimony of Sheriff Stuart and Deputy Selfridge and photographed the bullet holes. Although Granados did not see Appellant firing a pistol, he did state that Appellant unloaded a pistol at Owens's residence. Owens himself testified he heard gunshots during both drive-by shootings and identified Appellant's pickup as the vehicle from which the shots were fired. Ceballos corroborated Owens account and further testified the gunshots were coming from Appellant's pickup when Owens gave chase after the first drive-by shooting and, during the second drive-by shooting, she saw Appellant sitting atop the passenger-side window firing over the top of the pickup. Granados testified that, as they drove by Owens's house, Appellant was sitting on the passenger-side window as he heard something like gunshots coming from the front of

---

[7]Sheriff Stuart also testified that the bullets were imbedded so deep in the door that, in order to remove them, the front door would have to be destroyed.

14

the truck.  Finally, after Appellant was released from jail, he came to Owens's house and apologized for shooting up the house.

Based upon this evidence, we cannot say that the absence of a gun, bullets, or shell casings coupled with the *possibility* that the door could have been damaged in other ways, makes the State's evidence so weak that the verdict is clearly wrong or manifestly unjust.  Further, although some of the testimony may have been contradictory or inconsistent, our evaluation of the evidence "should not substantially intrude upon the jury's role as the sole judge of the weight and credibility of witness testimony."  *Jones v. State*, 944 S.W.2d 642, 648 (Tex.Crim.App. 1996), *cert. denied*, 522 U.S. 832, 118 S.Ct. 100, 39 L.Ed.2d 54 (1997).  *See Washington v. State*, 127 S.W.3d 197, 204 (Tex.App.--Houston [1st Dist.] 2003, pet. dism'd).  Accordingly, we find that the evidence in support of the jury's verdict was factually sufficient.  Appellant's points of error six through ten are overruled.

## Conclusion

The trial court's judgment is affirmed.

Patrick A. Pirtle
Justice

Do not publish.