NO. 07-08-0381-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

SEPTEMBER 23, 2009

_____

JOEY DALE STONE, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 31ST DISTRICT COURT OF WHEELER COUNTY;

NO. 4179; HONORABLE STEVEN R. EMMERT, JUDGE

_____

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, Joey Dale Stone, was convicted by a jury of engaging in organized criminal activity,[1] sentenced to thirteen years confinement, and fined $5,000. Appellant

---

[1]*See* Tex. Penal Code Ann. § 71.02(a) (Vernon Supp. 2008).

asserts the trial court erred by (1) denying his motion to suppress his confession and (2) denying his motion for a directed verdict. We affirm.

**Background**

In the summer of 2004, Wheeler County Deputy Sheriff Julian Torres had been investigating a crime ring involved in the manufacture of methamphetamine in Wheeler County for approximately six months. On July 29th of that year, Deputy Torres followed a pickup driven by Shawn Ray Hernandez to an isolated farmhouse. The pickup was missing its tailgate and he observed a large gray clothing bag with a paisley print in the truck bed. When the pickup pulled into the farmhouse, he waited outside the property. After the pickup departed, he made a traffic stop. During the traffic stop, he observed that the bag was no longer in the truck bed. Deputy Torres searched the pickup but found nothing. He wrote a warning and departed.

During the first week of August, Officer Kenneth Arant stopped the same pickup, this time being driven by Shirley Jones. When Deputy Torres arrived, he observed the same gray, paisley bag in the truck bed that he had previously observed when Hernandez was driving. A search of the bag revealed that it contained chemicals used to manufacture methamphetamine. Jones and her passenger, Margaret Hall, were arrested for possession of methamphetamine and possession of chemicals used to manufacture the drug.

On August 11, 2004, Deputy Torres was patrolling in the vicinity of Appellant's residence when he detected a strong odor of ether. This was significant to him because ether is used in the process of manufacturing methamphetamine. He left the area and contacted other officers for backup.

After backup arrived, Deputy Torres and another officer approached the front door of Appellant's residence and knocked. Hernandez answered the knock. Appellant was observed in the house but did not come to the door. Deputy Torres informed Hernandez and Appellant of his suspicions and asked Hernandez to come outside to talk.

After speaking with Hernandez, Deputy Torres returned to speak with Appellant and he was allowed inside the residence. Deputy Torres asked Appellant "what was going on about what they were doing there." Appellant responded that they were "gassing off a cook"[2] and that they had seen the officers on video monitors,[3] became nervous, and flushed the ingredients down the toilet. Although the officers smelled ether in the house, a search of the residence[4] revealed no incriminating evidence. During the search, the officers did observe surveillance equipment inside, and outside, the house as well as a police scanner. Without making an arrest, the officers departed.

---

[2]Deputy Torres testified that "gassing off" was a part of the manufacturing process of methamphetamine where ether was used in connection with pseudoephedrine pills in a coffee filter to separate the ephedrine from the pills. In the methamphetamine drug culture, the term "cook" is synonymous with manufacturing methamphetamine.

[3]Appellant had surveillance equipment on his house situated so he could see anyone coming and going either from the front or rear of his house.

[4]Appellant did not challenge the legality of the search.

On August 26, Deputy Torres made two traffic stops of separate vehicles being driven by Jimmie Don Westbrook and David Bias, respectively. During the stop, Jimmie Don appeared nervous and had no viable explanation for being where he was that night. Jimmie Don consented to a search of his pickup and Deputy Torres found a glass jar and some coffee filters. These items were significant to him because they too were commonly used in the manufacture of methamphetamine. Bias also consented to the search of his pickup, however, Deputy Torres found nothing of interest. Afterwards, Deputy Torres drove down the dirt road from which they had approached and located a roadside area where he found a can of ether that had been pressed into the ground by a shoe and a small green bag with a glass container inside containing what he believed was drain cleaner.

Deputy Torres next received information that a methamphetamine "cook" was going to occur around midnight, September 2. That night, Chief Joe Daniels stopped Hernandez's pickup for a speeding violation. Deputy Torres assisted. The occupants, Hernandez, Jimmie Don and his wife, Bobbie Westbrook, appeared nervous and gave inconsistent stories regarding their whereabouts prior to the stop. After obtaining consent to search, the officers[5] searched the pickup and detected a strong odor of ammonia. This was significant to Deputy Torres because he suspected that the pickup's occupants were involved in stealing anhydrous ammonia in preparation for the "cook" that night. He also

---

[5]Deputy Mack Marshall assisted the officers during the traffic stop and testified at trial corroborating Deputy Torres's account of the stop.

4

found a pair of leather gloves that smelled strongly of ammonia. This was significant because gloves are often used to protect the skin from burns when handling ammonia. Deputy Torres suspected that Hernandez, Jimmie Don, and Bobbie had stolen some anhydrous ammonia and hidden the chemical nearby. As a part of his investigation, Deputy Torres photographed their shoe soles and noticed that each pair of shoes had distinctive prints. He also photographed a tire on the pickup because it had a distinctive tread mark due to wear.

After searching accessible areas nearby where anhydrous ammonia was legally stored, the officers located a storage area where they discovered a one gallon glass pickle jar containing a small amount of liquid anhydrous ammonia. Deputy Torres photographed a tire pattern at the location that was consistent with the tire pattern from a tire on Hernandez's pickup. He also photographed a heel print that was consistent with the tread of Jimmie Don's tennis shoe.[6]

Deputy Torres asked Jimmie Don and Bobbie to come to the police station to be interviewed. They arrived, voluntarily gave their statements, and were placed under arrest. Jimmie Don and Bobbie described a number of locations where they manufactured methamphetamine. Afterwards, officers verified the locations–the most significant of which

---

[6]At another location in Lutie where anhydrous ammonia was legally stored in tanks, Deputy Torres photographed a shoe print consistent with the shoes Hernandez was wearing at the time of the traffic stop on September 2.

5

was a farm in Hemphill County where they found evidence of old generators, glass containers with meth oil inside, hundreds of cans of ether, and old coolers.

On October 21, 2004, Appellant was indicted by a Wheeler County Grand Jury for intending to establish, maintain, or participate in a combination of three or more persons, to-wit: Jimmy Don Westbrook, Bobbie Westbrook, Shawn Ray Hernandez, Tina Marie Williams, and David Wayne Bias, for the purpose of committing the first degree felony offense of manufacture of a controlled substance, to-wit: methamphetamine, in an amount of four grams or more but less than two hundred grams. *See* Tex. Penal Code Ann. § 71.02(a) (5) (Vernon Supp. 2008); Tex. Health & Safety Code Ann. § 481.112(d) (Vernon 2003). The offense was a felony of the first degree. *See* Tex. Penal Code Ann. § 71.02(b) (Vernon Supp. 2008)

On August 11, 2005, Appellant filed a motion to suppress his confession. At the suppression hearing held October 11, 2007, Deputy Torres was the sole witness. At the conclusion of the hearing, the court denied Appellant's motion.

Thereafter, a two-day trial was held on June 30 and July 1, 2008. In addition to the testimony of Deputies Torres and Marshall, Jimmie Don and Bobbie Westbrook testified. Bobbie testified that Appellant was a friend who let them use his house to manufacture drugs, went on "cooks" sometimes, and would melt down pills for them. She also testified Appellant used his scanner and surveillance devices to keep track of police activity and would call Hernandez to let them know the police were coming or where the police were

6

going to be. She testified that, on August 11, 2004, the day Deputy Torres searched Appellant's residence, Appellant was involved in the manufacture of methamphetamine and knew what was going on. He was responsible for surveillance and warned them to leave when he observed the police outside the house. She also testified that, on September 2, 2004, prior to the traffic stop, she had just picked up Hernandez and Jimmie Don from Appellant's residence. Their purpose for going there was to find out what supplies they had in order to "cook" that night.

Thereafter, the jury found Appellant guilty of engaging in organized criminal activity. The Court then sentenced him to thirteen years confinement and a fine of $5,000. This appeal followed.

**Discussion**

Appellant first asserts the trial court should have granted his motion to suppress because his incriminating statement was the result of a custodial interrogation in the absence of warnings against self-incrimination. He next asserts Jimmie Don's and Bobbie's testimony, as accomplice-witness testimony, was not sufficiently corroborated and should not be considered to support his conviction.

**I. Motion To Suppress**

Appellant asserts Deputy Torres should have informed Appellant of his right against self-incrimination on August 11, prior to asking any questions, because Appellant was a

7

suspect in an ongoing investigation; the officers asked Hernandez outside for questioning prior to questioning Appellant; and the officers did not tell Appellant he was free to leave. He contends that, under these circumstances, a reasonable person would believe his freedom of movement had been significantly restricted citing *Dowthitt v. State*, 931 S.W.2d 244 (Tex.Crim.App. 1996). The State contends that, when Appellant was questioned, such warnings were unnecessary because he was not in custody.

## A. Standard of Review

A trial court's ruling on a motion to suppress is reviewed for abuse of discretion; *Balentine v. State*, 71 S.W.3d 763, 768 (Tex.Crim.App. 2002), under a bifurcated standard. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex.Crim.App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex.App.–Fort Worth 2003, no pet.). At a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given to their testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex.Crim.App. 2000).

Because a trial judge's "custody" determination "presents a 'mixed question of law and fact;'" *Herrera v. State*, 241 S.W.3d 520, 526 (Tex.Crim.App. 2007) (quoting *Thompson v. Keohane*, 516 U.S. 99, 112-13, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995)), "we afford almost total deference to a trial judge's 'custody' determination when the questions of historical fact

8

turn on credibility and demeanor." *Id.* at 526-27 (citing *Ripkowski v. State*, 61 S.W.3d 378, 381 (Tex.Crim.App. 2001)). However, we review *de novo* a trial court's "custody" determination if questions of historical fact do not turn on credibility and demeanor. *Id. See Johnson*, 68 S.W.3d 644, 652-53 (Tex.Crim.App. 2002).

## B.    Appellant's Incriminating Statement

The safeguards of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), come into play when a person in custody is subjected to either express questioning or its functional equivalent. *Rhode Island v. Innis*, 446 U.S. 291, 300, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). An incriminating statement may be deemed "involuntary" either through a failure to comply with article 38.22 of the Texas Code of Criminal Procedure, noncompliance with the dictates of *Miranda*, or failure to comply with due process or due course of law because the statement was not freely given as a result of coercion, improper influences, or incompetency. *Wolfe v. State*, 917 S.W.2d 270, 282 (Tex.Crim.App. 1996). "When a defendant alleges that the *Miranda* protections were thwarted, the burden of showing admissibility rests on the prosecution." *Martinez v. State,* 272 S.W.3d 615, 623-24 (Tex.Crim.App. 2008).

The determinative dispute here concerns whether Appellant was "in custody" when he made the incriminating admission to Deputy Torres. "A person is in 'custody' only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest." *Herrera*, 241 S.W.3d at 525 (quoting

9

*Dowthitt,* 931 S.W.2d at 254). Moreover, our "custody" inquiry includes an examination of all of the objective circumstances surrounding the questioning. *Herring v. State*, 147 S.W.3d 425, 430 (Tex.App.–Amarillo 2003), *aff'd*, 147 S.W.3d 390 (Tex.Crim.App. 2004).

There are four general situations that may constitute custody: (1) when the suspect is physically deprived of his freedom of action in any significant way, (2) when a law enforcement officer tells the suspect that he cannot leave, (3) when the law enforcement officers create a situation that would lead a reasonable person to believe his freedom of movement is significantly restricted, and (4) when there is probable cause to arrest and law enforcement officers do not tell the suspect that he is free to leave. *Dowthitt*, 931 S.W.2d at 254. Concerning the first through third situations, the restriction upon freedom of movement must amount to the degree associated with an arrest as opposed to an investigative detention. *Id.* Here, Deputy Torres's uncontroverted testimony was that Appellant was not placed under arrest before, or after, he was questioned. Therefore, the first through third situations are not presented here. The question, then, is whether, during the encounter with Appellant, probable cause to arrest him developed necessitating that the officers inform him he that was free to leave.

Under the fourth situation, the officers' knowledge of probable cause must be manifested to the suspect; such manifestation could occur if information substantiating probable cause is related by the officers to the suspect or by the suspect to the officers. *Dowthitt*, 931 S.W.2d at 255. This fourth situation, however, does not automatically establish "custody." *Id.* Rather, "custody" is established in the fourth situation if the manifestation of

10

probable cause, combined with other circumstances, would lead a reasonable person to believe that he is under restraint to the degree associated with an arrest. *Id.*

"Situations where the manifestation of probable cause triggers custody are unusual." *Garcia v. State*, 237 S.W.3d 833, 837 (Tex.App.–Amarillo 2007, no pet.) (citing *State v. Stevenson*, 958 S.W.2d 824, 829 n.7 (Tex.Crim.App. 1997)). In *Dowthitt,* for instance, the Court of Criminal Appeals held that "custody" began when Dowthitt admitted to his presence during certain murders because "a reasonable person would have realized the incriminating nature of the admission," and other factors were present that "involv[ed] the exercise of police control" over him. *Id.* at 257. These other factors included a lengthy interrogation lasting over twelve hours from the time he first appeared at the police station to the time he made the incriminating statement, police officers accompanied him to the restroom, and police officers ignored his requests to see his wife. *Id.*

Here, the officers were investigating an odor of ether emanating from Appellant's residence. Deputy Torres questioned Appellant in his living room without objection. Once Appellant volunteered the incriminating information, the officers ceased their questioning. Thereafter, the officers searched the residence and departed without taking anyone into custody or placing anyone under arrest. That Appellant was a suspect in an ongoing investigation alone does not equate to custody for purposes of determining whether a statement is voluntarily given. *Meek v. State*, 790 S.W.2d 618, 621 (Tex.Crim.App. 1990) (citing *Beckwith v. State*, 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976)). Furthermore,

11

there is no evidence that the officers threatened Appellant, made any promises of leniency, restrained Appellant, handcuffed him, or placed him under arrest.

Carefully considering all of the circumstances surrounding Appellant's questioning, we hold that a reasonable person in Appellant's situation would not have felt that his freedom of movement was restrained to a degree associated with formal arrest. *See Garcia*, 237 S.W.3d at 838. Because we hold that there was no custodial interrogation that would require the officers to give Appellant warnings required by *Miranda, supra,* and article 38.22 of the Texas Code of Criminal Procedure, we find the trial court did not abuse its discretion by denying Appellant's motion to suppress. Appellant's first issue is overruled.

## II.    Motion For Directed Verdict

Appellant contends the trial court erred in not granting his motion for directed verdict because the State's evidence was insufficient to support his conviction without the accomplice witness[7] testimony of Jimmie Don and Bobbie Westbrook, and that testimony was not sufficiently corroborated. *See* Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon 2005).

---

[7]An accomplice is someone who participates with the defendant before, during, or after the commission of a crime and acts with the required culpable mental state. *Cocke v. State,* 201 S.W.3d 744, 748 (Tex.Crim.App. 2006); *Paredes v. State*, 129 S.W.3d 530, 536 (Tex.Crim.App. 2004). Neither party disputes whether Jimmie Don and Bobbie were accomplices. In fact, both were indicted and convicted of engaging in a combination to manufacture methamphetamine as a result of Deputy Torres's investigation.

12

In advancing his argument pertaining to insufficient corroboration, Appellant presents a two-part challenge. First, he contends the State's evidence was insufficient to corroborate the accomplice witness testimony, even if his incriminating statement was admissible. Secondly, he attempts to distinguish the facts of this case from other cases holding that a defendant's own incriminating statements can be used to corroborate the testimony of an accomplice.[8]

## A.    Standard of Review

A complaint regarding a trial court's failure to grant a motion for directed verdict is a challenge to the legal sufficiency of the State's evidence at trial; *Canales v. State*, 98 S.W.3d 690, 693 (Tex.Crim.App. 2003); *Williams v. State*, 937 S.W.2d 479, 482 (Tex.Crim.App. 1996), not the factual sufficiency. *See Long v. State*, 137 S.W.3d 726, 736 (Tex.App.–Waco 2004, pet. ref'd); *Turner v. State*, 101 S.W.3d 750, 761 (Tex.App.–Houston [1st Dist.] 2003, pet. ref'd); *Isassi v. State*, 91 S.W.3d 807, 809 (Tex.App.–El Paso 2002, pet. ref'd).

It is a fundamental rule of criminal law that one cannot be convicted of a crime unless it is shown beyond a reasonable doubt that the defendant committed each element

---

[8]It is well established that an accused's admission or confession, under most circumstances, will be sufficient to corroborate accomplice testimony. *Jackson v. State*, 516 S.W.2d 167, 171 (Tex.Crim.App. 1974). Having found Appellant's statement was voluntary; *Zuliani v. State*, 903 S.W.2d 812, 825 (Tex.App.–Austin 1995, pet. ref'd), and proof of the statement does not depend on  accomplice testimony; *Thompson v. State*, 54 S.W.3d 88, 94 (Tex.App.–Tyler 2000, pet. ref'd) (citing *Farris v.* State, 819 S.W.2d 490, 495 (Tex.Crim.App. 1990)), his confession may be used to corroborate Jimmie Don's and Bobbie's accomplices' testimony. *See Alonzo v. State*, 591 S.W.2d 842, 844 (Tex.Crim.App. 1980).

13

of the alleged offense.  U.S. Const. amend. XIV; Tex. Code Crim. Proc. Ann. art. 38.03 (Vernon Supp. 2008); Tex. Penal Code Ann. § 2.01 (Vernon 2007).  In a sufficiency of the evidence review, the essential elements of the offense are those of a hypothetically correct jury charge for the offense in question (i.e., one that accurately sets out the law and adequately describes the offense for which the appellant was tried without increasing the State's burden of proof or restricting the State's theory of criminal responsibility).  *Hooper v. State*, 214 S.W.3d 9, 14 (Tex. 2007); *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997).

In assessing the legal sufficiency of the evidence to support a criminal conviction, a reviewing court must consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences to be drawn therefrom, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Hooper*, 214 S.W.3d at 13.  In our analysis, we must give deference to the responsibility of the jury to fairly resolve conflicts in testimony, weigh the evidence, and draw reasonable inferences form that evidence.  *Id.*

Circumstantial evidence alone is sufficient to establish an element of the offense and the sufficiency standard of review is the same for both direct and circumstantial evidence cases.  *Hooper*, 214 S.W.3d at 13.  Each fact need not point directly and independently to the guilt of the accused, so long as the cumulative force of the probative

14

evidence, when coupled with reasonable inferences drawn therefrom, is sufficient to support the conviction. *Evans v. State*, 202 S.W.3d 158, 166 (Tex.Crim.App. 2006).

### B.      Engaging In Organized Criminal Activity

Texas Penal Code § 71.02 provides, in pertinent part, as follows:

A person commits an offense, if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination . . . he commits or conspires to commit one or more [enumerated offenses including the unlawful manufacture of a controlled substance or dangerous drug] . . . .

Tex. Penal Code Ann. § 71.02(a)(5) (Vernon Supp. 2008).

To establish participation in a combination, the State must prove "that appellant intended to 'establish, maintain, or participate in' a group of three or more, in which the members intend to work together in a continuing course of criminal activities." *Nguyen v. State*, 1 S.W.3d 694, 697 (Tex.Crim.App. 1999). These activities need not, individually, be criminal offenses. *Id.* *See* Tex. Penal Code Ann. § 71.01(a) (Vernon 2003).

However, before we compare the essential elements of this crime to the facts adduced at trial while applying the applicable standard of review, we must first determine whether the State offered sufficient non-accomplice evidence during trial to corroborate the testimony of Jimmie Don and Bobbie. If so, then we will test the legal sufficiency of all the evidence including Jimmie Don's and Bobbie's accomplice testimony. In making these

15

determinations, we consider the evidence adduced at trial by both the State and Appellant. *See Cook v. State*, 858 S.W.2d 467, 470 (Tex.Crim.App. 1993).

### C. Accomplice-Witness Rule & Legal Sufficiency

Article 38.14 of the Texas Code of Criminal Procedure provides that a conviction cannot stand on accomplice testimony unless there is evidence tending to connect the defendant to the offense. Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon 2005). This rule is a statutorily imposed review and is not derived from federal or state constitutional principles that define legal and factual sufficiency standards. *Brown v. State,* 270 S.W.3d 564, 568 (Tex.Crim.App. 2008), *cert. denied,* 77 USLW 3595, __ U.S. __,129 S.Ct. 2075, 173 L.Ed.2d 1139 (2009).

When evaluating the sufficiency of corroboration evidence under the accomplice-witness rule, we  eliminate the accomplice testimony from consideration and then examine the remaining portions of the record to see if there is any evidence that tends to connect the accused with the commission of the crime. *Castillo v. State,* 221 S.W.3d 689, 691 (Tex.Crim.App. 2007) (citing  *Solomon v. State*, 49 S.W.3d 356, 361 (Tex.Crim.App. 2001)). To meet the requirements of the rule, the corroborating evidence need not prove the defendant's guilt beyond a reasonable doubt by itself. *Brown,* 270 S.W.3d at 568; *Trevino v. State*, 991 S.W.2d 849, 851 (Tex.Crim.App. 1999). Rather, viewing the evidence in a light most favorable to the verdict; *Brown,* 270 S.W.3d at 568 (citing *Gill v. State*, 873 S.W.2d 45, 48 (Tex.Crim.App. 1994), the non-accomplice evidence must simply

link the accused in some way to the commission of the crime and show that "a rational factfinder could conclude that the non-accomplice evidence 'tends to connect' appellant to the offense." *Simmons v. State*, 282 S.W.3d 504, 509 (Tex.Crim.App. 2009); *Hernandez v. State*, 939 S.W.2d 173, 178-79 (Tex.Crim.App. 1997).  The corroborating evidence need not connect the defendant to every element of the crime.  *Vasquez v. State*, 56 S.W.3d 46, 48 (Tex.Crim.App. 2001).   There is no set amount of non-accomplice corroboration evidence that is required for sufficiency purposes; "[e]ach case must be judged on its own facts."  *Gill v. State*, 873 S.W.2d 45, 48 (Tex.Crim.App. 1994).

Moreover, circumstances that are apparently insignificant may constitute sufficient evidence of corroboration.  *Trevino*, 991 S.W.2d at 852.  Although proof that the accused was at or near the scene of the crime is insufficient to corroborate; *Golden v. State*, 851 S.W.2d 291, 294 (Tex.Crim.App. 1993), "when coupled with other suspicious circumstances, [such evidence] may tend to connect the accused to the crime so as to furnish sufficient corroboration to support a conviction."  *Brown v. State*, 672 S.W.2d 487, 489 (Tex.Crim.App. 1984).

The non-accomplice evidence at trial established that Appellant used methamphetamine and bought drugs from Hernandez.  He also knew Jimmie Don and Bobbie.  This evidence corroborates testimony by Jimmie Don and Bobbie that they knew Appellant in connection with their drug-related activities.

17

The physical evidence obtained by Deputy Torres, on September 2, 2004, connecting Hernandez with information that there was going to be a "cook" requiring the theft of anhydrous ammonia corroborates Jimmie Don's testimony that he "cooked" with Hernandez and a "cook" was anticipated that night. The evidence also corroborates Bobbie's testimony that Hernandez was involved in the combination to manufacture methamphetamine.

Deputy Torres's testimony that, on August 11, he detected a strong odor of ether in, and around, Appellant's house, coupled with his knowledge that ether was used in the manufacture of methamphetamine, and the presence of Appellant and Hernandez at the residence, corroborates Jimmie Don's testimony that, prior to the arrival of the police, he was at Appellant's house "cooking" methamphetamine with Hernandez. This evidence corroborates his testimony that he "cooked" at other locations belonging to Appellant. This evidence also corroborates Bobbie's testimony that Appellant permitted them to use his house to manufacture methamphetamine, was aware they were "cooking" on August 11, and participated in the "cook." That he had a police scanner and surveillance cameras at his house to monitor activity outside also corroborates Bobbie's testimony that Appellant used these devices to monitor police activities and call Hernandez with information. It also corroborates her testimony that Appellant was responsible for surveillance on August 11 while they were "cooking" methamphetamine at his house and warned her of the police officers' arrival. Appellant's statement corroborates the testimony of Jimmie Don and

18

Bobbie regarding the events of August 11 as well as testimony related to other participation by Appellant in the combination to manufacture methamphetamine.

Having reviewed the record in its entirety, we find the testimony of Deputies Torres and Marshall, the physical evidence gathered during the investigation, Appellant's disputed statement to Deputy Torres, and his testimony at trial, provide sufficient non-accomplice evidence to corroborate the testimony of the accomplice witnesses, Jimmie Don and Bobbie Westbrook.

Moreover, taking all the evidence together and considering Appellant's statement that he participated in the manufacture of methamphetamine with the members of the combination,[9] we find legally sufficient evidence from which a jury could reasonably infer Appellant intended to participate in a combination by assisting in the manufacture of methamphetamine with, at least, three members of the combination.

Contrary to Appellant's assertion, *Shaw v. State*, 89 Tex.Crim. 205, 229 S.W. 509 (1921) and *Kennedy v. State*, 78 Tex.Crim. 24, 180 S.W. 238 (1915) do not require a different result. Like *Shaw*, here, there is corroborating non-accomplice evidence other than Appellant's statement to lend corroboration to the accomplice testimony. 180 S.W. at 512. Further, *Kennedy* stands for the proposition that, although accomplice testimony

---

[9]An accused's confession alone can be used to supply the necessary corroboration for an accomplice's testimony, evidence sufficient to sustain the verdict; *Rayburn v. State*, 362 S.W.2d 649, 650 (Tex.Crim.App. 1962); *Mitchell v. State*, 669 S.W.2d 349, 350 (Tex.App.–Houston [14th Dist.] 1984, no pet.), and *corpus delicti* of the offense. *Benjamin v. State*, 160 Tex.Crim. 624, 274 S.W.2d 402, 403 (1954).

and an incriminating statement , each apart and on their own, may be insufficient to sustain a conviction, the two together may support one another in sustaining a conviction. 180 S.W. at 239. Appellant's second issue is overruled.

## Conclusion

      The trial court's judgment is affirmed.

Patrick A. Pirtle
Justice

Do not publish.